**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

ALEKSEI SELEZNEV,

    **Petitioner,**

        **v.**                          **Civil Action No. 3:26-cv-130**

MARKWAYNE MULLIN,[1] *et al.,*

    **Respondents.**

**MEMORANDUM OPINION**

This matter comes before the Court on Petitioner Aleksei Seleznev's ("Petitioner")

Amended Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 (the "Amended

Petition"). (ECF No. 7.) In the Amended Petition, Mr. Seleznev challenges his detention by

Immigration and Customs Enforcement ("ICE"), arguing that ICE has improperly detained him

subject to 8 U.S.C. § 1225 of the Immigration and Nationality Act ("INA"), and that ICE's

revocation of his humanitarian parole under 8 U.S.C. § 1182(d)(5)(A) deprived him of his

constitutional right to due process of law under the Fifth Amendment to the United States

Constitution.[2] (ECF No. 7 ¶¶ 55–70.)

---

[1] Markwayne Mullin was sworn in as the Secretary of Homeland Security on March 24, 2026. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, he has been substituted for the former Secretary of Homeland Security as Respondent in this action.

[2] The Fifth Amendment to the United States Constitution provides, in pertinent part:

> No person shall . . . be deprived of life, liberty or property without due process of law.

U.S. Const. amend. V.

For the reasons articulated below, the Court will grant the Amended Petition. (ECF No. 7.)  The Court will order Respondents to release Mr. Seleznev.

### I.  Factual and Procedural Background

**A.      Factual Background[3]**

Mr. Seleznev "is an asylum seeker from Russia." (ECF No. 7 ¶ 1.)  "On or about October 3, 2021, Petitioner applied for admission into the United States from Mexico at the San Ysidro Port of Entry[] in San Ysidro, California.  At the time of Petitioner's application for admission, he did not have any valid entry document to be admitted into the United States." (ECF No. 9-1 ¶ 6.)

"On or about October 4, 2021," immigration officials issued Petitioner "a Notice to Appear ('NTA')[4] charging him with being inadmissible to the United States (and thus removable from the United States) under 8 U.S.C. § 1182(a)(7)(A)(i)(I), as an alien who, at the time of application for admission to the United States was not in possession of any valid entry document." (ECF No. 9-1 ¶ 7.)  On the same date, Petitioner "entered the United States through a designated port of entry and was granted humanitarian parole by U.S. Customs and Border Protection ('CBP')." (ECF No. 7 ¶ 1.)

---

[3] The Court recites the facts as alleged by Mr. Seleznev in his Amended Petition, (ECF No. 7), and by the United States as alleged in a declaration it attaches to its briefing signed by ICE Assistant Field Officer Director Charles M. Byrne, (ECF No. 9-1).  Where appropriate, the Court has noted facts that the parties contest.  Otherwise, the facts recited by the Court are uncontested.

[4] A Notice to Appear is a "'[c]harging document' that 'initiates a proceeding before an Immigration Judge.'" *Hasan v. Crawford*, 800 F. Supp. 3d 641, 647 n.3 (E.D. Va. 2025) (quoting 8 C.F.R. § 1003.13).

CBP issued Mr. Seleznev "an I-94 parole document valid until October 2, 2022."[5] (ECF No. 9-1 ¶ 8; *see also* ECF No. 7-2, at 2.) When CBP granted Mr. Seleznev humanitarian parole, it "determined that Petitioner was neither a flight risk nor a danger to the community." (ECF No. 7 ¶ 2.) On August 15, 2022, while on humanitarian parole, Mr. Seleznev "timely filed an Application for Asylum and Withholding of Removal." (ECF No. 7 ¶ 21.) Petitioner "has a valid work permit" and works as a truck driver. (ECF No. 7 ¶¶ 3, 21.)

"On January 6, 2026,[6] while driving, Petitioner was re-detained by ICE for what appears to be no individualized reason. This detention was executed without an arrest warrant and without the individualized assessment required by law."[7] (ECF No. 7 ¶ 3.) Mr. Seleznev is currently detained at the Farmville Detention Center. (ECF No. 7 ¶ 3.)

Also on January 6, 2026, immigration officials issued Petitioner "a superseding NTA charging him with being inadmissible to the United States." (ECF No. 9-1 ¶ 10.) On February 2, 2026, Mr. Seleznev filed "a request for release on bond [] with the Immigration Court." (ECF No. 9-1 ¶ 11.) On February 9, 2026, an Immigration Judge "denied . . . Petitioner's motion for

---

[5] In his Amended Petition, Mr. Seleznev does not explain whether or when his grant of humanitarian parole was set to expire. But Mr. Seleznev attaches to his Amended Petition his parole documentation, which indicates an "Admit Until Date" of "10/02/2022." (ECF No. 7-2, at 2.) In a declaration attached to its response to the Amended Petition, ICE Assistant Field Office Director Charles Byrne notes that Petitioner's parole was "valid until October 2, 2022." (ECF No. 9-1 ¶ 8.)

[6] Respondents assert that ICE arrested Mr. Seleznev "[o]n January 5, 2026." (ECF No. 9-1 ¶ 9.)

[7] While Mr. Seleznev first asserts that ICE arrested him "without an arrest warrant," he later notes that "[n]either Petitioner nor Counsel have been able to verify whether Respondents issued a Warrant of Arrest (Form I-200) at the time of the arrest by Respondents." (ECF No. 7 ¶ 47.) No arrest warrant appears on the record.

custody redetermination due to lack of jurisdiction,[8] alternatively the Immigration Judge determined Petitioner to be a flight risk." (ECF No. 9-1 ¶ 12.)

Mr. Seleznev then "filed a Form I-589, Application for Asylum and for Withholding of Removal, with the Immigration Court." (ECF No. 9-1 ¶ 13.) Petitioner "admitted the allegations in his NTA and the charge of inadmissibility [to the Immigration Judge]. Based on Petitioner's admissions and concessions, Russia was designated as the country of removal should removal become necessary." (ECF No. 9-1 ¶ 13.) The Immigration Judge scheduled a hearing for March 11, 2026 to adjudicate Mr. Seleznev's application for asylum. (ECF No. 9-1 ¶ 13.) "At Petitioner's request, the Immigration Court continued the [March 11, 2026] hearing." (ECF No. 12, at 1.) The Immigration Court has scheduled another individual hearing for Petitioner for April 3, 2026. *See* Executive Office of Immigration Review, Automated Case Information, https://acis.eoir.justice.gov/en/caseInformation (last visited Apr. 2, 2026).

**B.    Procedural Background**

On February 17, 2026, Mr. Seleznev filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (ECF No. 1.) On February 19, 2026, the Court ordered Petitioner to file an amended petition that complied with Rule 2 of the Rules Governing Section 2254 Cases.[9] (ECF

---

[8] Mr. Seleznev notes that "the Board of Immigration Appeals recently held that Immigration Judges lack authority to hear bond requests or to grant bond to [noncitizens] who are present in the United States without admission." (ECF No. 7 ¶ 18 (quotation omitted).) On September 5, 2025, the Board of Immigration Appeals ("BIA") released a precedential decision in *Matter of Yajure Hurtado*. "Pursuant to the BIA's decision in *Hurtado*, nearly all noncitizens who entered the United States without inspection are now subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2), rather than the discretionary detention provisions of 8 U.S.C. § 1226(a)." *Soto v. Soto*, 807 F. Supp. 3d 397, 401 (D.N.J. 2025) (citing *Hurtado*, 29 I&N Dec. at 227–29).

[9] Rule 1(b) of the Rules Governing § 2254 cases permits this Court to apply the Rules Governing § 2254 Cases to petitions under 28 U.S.C. § 2241. Rule 1(b), Rules Governing § 2254 Cases; *see Aguayo v. Harvey*, 476 F.3d 971, 976 (D.C. Cir. 2007).

No. 5.)  On February 24, 2026, Mr. Seleznev filed the instant Amended Petition, which complies with Rule 2 of the habeas rules.  (ECF No. 7.)

On February 26, 2026, the Court ordered Respondents to file a response to the Amended Petition.  (ECF No. 8.)  Respondents responded, (ECF No. 9), and Mr. Seleznev replied, (ECF No. 10).

## II.  Standard of Review

### A.    Petitions for Writs of Habeas Corpus Under 28 U.S.C. § 2241

28 U.S.C. § 2241(a) provides that "[w]rits of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions."  *Id.*  "A federal court may grant habeas relief only on the ground that the petitioner is in custody in violation of the Constitution or laws or treaties of the United States."  *Torrence v. Lewis*, 60 F.4th 209, 213 (4th Cir. 2023) (internal citations and brackets omitted).  After receiving the petition and any response thereto, "[t]he court shall summarily hear and determine the facts, and dispose of the matter as law and justice require."  28 U.S.C. § 2243.

### B.    Detention Under 8 U.S.C. §§ 1225 and 1226

Section 1225(a) of the INA provides that "[a]n alien present in the United States who has not been admitted or who arrives in the United States . . . shall be deemed for purposes of this chapter an applicant for admission."  8 U.S.C. § 1225(a)(1).  Section 1225 then divides "applicants for admission" into two categories under § 1225(b)(1) and § 1225(b)(2).

Section 1225(b)(2) pertains to the Amended Petition and the parties' filings.  Section 1225(b)(2) provides that if an immigration officer "determines that an alien *seeking admission* is not clearly and beyond a doubt entitled to be admitted, the alien *shall* be detained."  8 U.S.C. § 1225(b)(2)(A) (emphasis added).  As this Court has previously explained, § 1225 covers

individuals "*actively* seeking admission into the country, and not those who have already entered the country." *Duarte Escobar v. Perry*, 807 F. Supp. 3d 564, 576 (E.D. Va. 2025) (emphasis in original) (quoting *Quispe v. Crawford*, No. 1:25-cv-1471 (AJT), 2025 WL 2783799, at *5 (E.D. Va. Sept. 29, 2025)). Because individuals detained under this section are subject to *mandatory* detention, § 1225(b)(2) "does not grant detainees a bond hearing." *Id.* at 579.

8 U.S.C. § 1226, in contrast, establishes "the default rule" for detaining and removing aliens "'already present in the United States.'" *Id.* at 578 (quoting *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018)). Section 1226(a) provides that, "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Pending the removal decision, the Attorney General may "continue to detain the arrested alien," "*release the alien on . . . bond of at least $1,500*," or "release the alien on . . . conditional parole." *Id.* § 1226(a)(1)–(2) (emphasis added). Thus, individuals subject to detention under § 1226(a) are entitled to a bond hearing.

As this Court has previously explained, §§ 1225 and 1226 create a dichotomy: § 1225(b)(2)(A) "covers aliens *seeking admission* to the United States" and § 1226(a) "covers aliens *already present* in the United States." *Duarte Escoboar*, 807 F. Supp. 3d at 578. A detainee seeking bond must therefore demonstrate that they are detained subject to § 1226, which permits bond determinations, rather than § 1225, which does not.

### C.     Humanitarian Parole Under 8 U.S.C. § 1182(d)(5)(A)

Even if an individual is classified as an alien "seeking admission" subject to mandatory detention under § 1225, the INA provides that an applicant for admission "may be temporarily released on parole for urgent humanitarian reasons or significant public benefit." *Jennings*, 583 U.S. at 288 (quotation omitted). Specifically, 8 U.S.C. § 1182(d)(5)(A) provides that

6

"[t]he Secretary of Homeland Security may . . . in his [or her] discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States." *Id.*  Parole of an alien subject to mandatory detention "shall not be regarded as an admission of the alien." *Id.*[10]  Specifically, "aliens who arrive at ports of entry—even those paroled elsewhere in the country for years pending removal—are treated for due process purposes as if stopped at the border." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139 (2020) (quotation omitted).

Section 1182(d)(5)(A) places some limits on humanitarian parole: *"when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served* the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." *Id.* (emphasis added).

Regulations implementing this provision of the INA outline further how immigration officials may revoke a detainee's humanitarian parole.  Humanitarian parole under § 1182(d)(5)(A) "shall be automatically terminated without written notice . . . at the expiration of the time for which parole was authorized." 8 C.F.R. § 212.5(e)(1)(ii).[11]  At that point, "any order of exclusion, deportation, or removal previously entered shall be executed.  If the exclusion,

---

[10] The INA further provides in its definitions section that "[a]n alien who is paroled under section 1182(d)(5) . . . shall not be considered to have been admitted." 8 U.S.C. § 1101(a)(13)(B).

[11] The implementing regulations also provide that parole "shall be automatically terminated without written notice . . . upon the departure from the United States of the alien[.]" 8 C.F.R. § 212.5(e)(1)(i).  Because Mr. Seleznev did not depart from the United States after his parole into the country, the Court does not discuss this provision of the regulations below.

deportation, or removal order cannot be executed within a reasonable time, the alien shall again be released on parole unless in the opinion of the official listed [elsewhere in the regulation] the public interest requires that the alien be continued in custody." *Id.* § 212.5(e)(2)(i).

Not all grants of parole are subject to automatic termination. In cases where a parolee is not subject to the automatic termination of their parole, that parole "shall be terminated upon written notice to the alien and he or she shall be restored to the status that he or she had at the time of parole." *Id.* § 212.5(e)(2)(i). But immigration officials may terminate the parole of an alien not subject to automatic termination only "*upon accomplishment of the purpose for which parole was authorized* or when in the opinion of one of the officials listed [elsewhere in the regulation], neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States." *Id.* (emphasis added). And like parolees facing automatic termination, "any order of exclusion, deportation, or removal previously entered shall be executed" once written notice is provided to these parolees. *Id.* § 212.5(e)(2)(i). Likewise, "[i]f the exclusion, deportation, or removal order cannot be executed within a reasonable time, the alien shall again be released on parole unless in the opinion of the official listed [elsewhere in the regulation] the public interest requires that the alien be continued in custody." *Id.*

### III. Analysis

Mr. Seleznev argues that his detention is unlawful for three reasons. First, Petitioner contends that Respondents have unlawfully subjected him to the mandatory detention provision of 8 U.S.C. § 1225(b)(2)(A), rather than the discretionary detention provision of 8 U.S.C. § 1226(a). (ECF No. 7 ¶¶ 25–42.) Second, Mr. Seleznev asserts that Respondents failed to obtain a warrant, as required for detention under § 1226(a). (ECF No. 7 ¶¶ 43–49.) Third, Petitioner insists that Respondents have deprived him of due process of law by revoking his

humanitarian parole under 8 U.S.C. § 1182(d)(5)(A), despite failing to serve the purposes of that parole. (ECF No. 7 ¶¶ 50–54.) In response, Respondents contend that Mr. Seleznev is properly detained pursuant to § 1225 and that he has received all the process he is due. (ECF No. 9, at 5–23.)

The Court will grant the Amended Petition. Regardless of the statutory provision under which Petitioner is detained, Respondents have failed to provide Petitioner him with the process due under § 1182(d)(5)(A) and the Fifth Amendment. Because the Court concludes that Mr. Seleznev's due process rights have been violated, it need not reach his statutory argument. The Court will order Respondents to release Mr. Seleznev.

### A.    Mr. Seleznev's Due Process Rights Have Been Violated

Mr. Seleznev contends that his detention violates his due process rights under the Fifth Amendment. (ECF No. 7 ¶¶ 50–54, 61–70.) According to Petitioner, "[t]he 'purpose' of [his] parole was to allow him to remain in the United States while pursuing his applications for asylum and withholding of removal. Because Petitioner's asylum claim remains pending . . . the purpose of his parole has not been served" and "any attempt to return Petitioner to physical custody before the adjudication of his asylum claim violates the express terms of the Parole Statute." (ECF No. 7 ¶ 51.) Respondents counter that Mr. Seleznev's "due process rights extend no further than what the INA provides" and that, even if the Court determines that Mr. Seleznev's due process rights extend beyond the INA, those rights have not been violated. (ECF No. 9, at 16–23.)

Regardless of whether Mr. Seleznev's due process rights are defined by the INA alone or the Fifth Amendment, Respondents have failed to provide Petitioner with the process he is due. As a result, Mr. Seleznev's due process rights have been violated.

9

### 1. The Court Will Consider the Process Due to Mr. Seleznev Under Both the Statutory Scheme and Under the *Mathews v. Eldridge* Framework

Petitioner posits that the Court should analyze his due process rights under the Fifth Amendment and the framework established in *Mathews v. Eldridge*, 424 U.S. 319 (1976). (ECF No. 7 ¶ 68.) Respondents contend that the INA alone defines Mr. Seleznev's due process rights. (ECF No. 9, at 16–19.)

Courts in this District have applied both standards. Some courts have determined that provisions of the INA alone outline the due process rights of parolees like Mr. Seleznev. *See Pipa-Aquise v. Bondi*, No. 1:25-cv-1094 (MSN), 2025 WL 2490657, at *2 (E.D. Va. Aug. 5, 2025) ("[A]n entering alien has only those rights concerning his admissibility as Congress has statutorily provided.") (quotation omitted); *Rodriguez v. Bondi*, No. 1:25-cv-791 (AJT), 2025 WL 2490670, at *3 (E.D. Va. June 24, 2025) ("Where an applicant is an arriving alien, due process only requires those rights regarding admission that Congress has provided by statute.") (quotations omitted). Others apply the *Mathews* framework to parolees like Petitioner. *See Pineda-Berrios v. Lyons*, No. 1:25-cv-2332 (LMB), 2026 WL 384159, at *5 (E.D. Va. Feb. 11, 2026).

Regardless of which due process framework the Court applies, the answer remains the same: Mr. Seleznev's due process rights have been violated.

### 2. Respondents Have Not Provided Mr. Seleznev with the Process Due Under § 1182(d)(5)(A)

Even if Mr. Seleznev's due process rights are defined by statute alone, Respondents have not provided Petitioner with due process.

The Court first observes that neither party has described in sufficient detail the statutory and regulatory scheme governing the revocation of parole. Neither Petitioner nor Respondents

10

cite the regulations implementing § 1182(d)(5)(A), which explain the process by which Respondents may revoke parole and what protections Respondents must afford Petitioner. *See* 8 C.F.R. § 212.5(e)(1)–(2). Neither party analyzes the effect of the expiration of Mr. Seleznev's parole on his Amended Petition. The automatic expiration of an individual's parole typically determines whether or not that individual is entitled to notice before their parole is revoked. 8 C.F.R. § 212.5(e)(1)(ii).

Respondents, meanwhile, do not acknowledge that regardless of the regulatory scheme, § 1182(d)(5)(A) itself provides that the Secretary of Homeland Security shall return an alien "to the custody from which was paroled" "when the purposes of such parole shall . . . have been served." Respondents offer no argument as to whether the purposes of Mr. Seleznev's parole have been served. The record itself is similarly bereft of any indication that the purposes of Mr. Seleznev's parole had or had not been served prior to his detention.

The only issue properly before the Court is that raised by Mr. Seleznev, namely that Respondents have denied him due process of law by revoking his parole before its "purposes" had been "served." As Mr. Seleznev correctly observes, courts around the country have determined that, when, as here, a petitioner is paroled into the United States for purposes of applying for asylum, and that asylum application remains pending, revoking parole without a determination as to whether its purposes have been served is inappropriate. *See Y-Z-L-H v. Bostock*, 792 F. Supp. 3d 1123, 1144–45 (D. Or. July 9, 2025). Because Petitioner's asylum application remains pending, and because Respondents make no argument to the contrary, the Court concludes that Respondents have deprived Mr. Seleznev of due process under the provisions of the INA by revoking his parole prior to the service of his parole's purposes.

11

### 3. Respondents Also Have Not Provided Mr. Seleznev with the Process Due When Applying the *Mathews* Framework

The Court reaches the same answer when it instead applies the framework of *Mathews v. Eldridge*. *Mathews* requires courts to weigh three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and, (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335–36.

First, "[t]he interest in being free from physical detention" is "the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). Even if Respondents are correct that a parolee "does not have the same status for due process purposes as an alien who has effected entry," (ECF No. 9, at 21–22 (quotation omitted)), Mr. Seleznev still has a significant private interest in remaining free. *See Pineda-Berrios*, 2026 WL 384159, at *6 (finding parolee detained subject to § 1225 had a significant liberty interest).

Second, Mr. Seleznev faces a serious risk of the erroneous deprivation of his due process rights. As described above, Respondents place nothing on the record about whether the purposes of Mr. Seleznev's parole have been served, despite § 1182(d)(5)(A)'s requirement that an alien may be returned "to the custody from which he [or she] was paroled" "when the purposes of such parole shall . . . have been served." In fact, Respondents argue that Petitioner faces little risk of an erroneous deprivation of his due process rights because, even where he is detained subject to § 1225's mandatory detention provisions, Mr. Seleznev has "the ability to seek parole . . . for any 'urgent humanitarian reasons or significant public benefit.'" (ECF No. 9, at 22 (citing § 1182(d)(5)(A)).) Respondents ignore that Petitioner *has already received* humanitarian

12

parole under § 1182(d)(5)(A) and that Respondents have summarily revoked that parole. Mr. Seleznev's Amended Petition is predicated on the notion that he was validly paroled into the United States; his due process rights are not safeguarded by Respondents' assurances that he could apply for parole *again*.

Third, Respondents have legitimate interests in immigration enforcement. "Congress has repeatedly shown that it considers immigration enforcement—even against otherwise non-criminal aliens—to be a vital public interest." *Miranda v. Garland*, 34 F.4th 338, 364 (4th Cir. 2022). But Respondents "remain subject to an obligation to effectuate [Petitioner's] detention in a manner that comports with due process. Nothing in this record explains why [Respondents] are unable to efficiently enforce the immigration laws . . . while also affording individuals with their core due process right: notice and an opportunity to be heard." *Pineda-Berrios*, 2026 WL 384159, at *7 (quotations omitted). Indeed, the record is bereft of any indication about whether Respondents have determined that the purposes of Mr. Seleznev's parole have been served. Respondents have provided Petitioner "with no process at all, much less prior notice, no showing of changed circumstances, or an opportunity to respond." *Id.*

Because all three *Mathews* factors weigh in his favor, the Court must find that Petitioner's due process rights under the Fifth Amendment have been violated.

## B. The Appropriate Remedy for the Violation of Mr. Seleznev's Due Process Rights is Immediate Release

Because Petitioner's due process rights have been violated, the Court must determine the appropriate remedy for that violation. Respondents revoked Mr. Seleznev's parole without any determination as to whether its purposes had been served. The only remedy for that violation of his due process rights is release. To be sure, Respondents may well determine that the purposes of Mr. Seleznev's parole have been served. But on the record before the Court, without any such

13

determination, Petitioner's detention is improper.  The Court will order Respondents to release Mr. Seleznev immediately and provide a date certain by which they will hold a hearing at which Respondents will make a determination as to whether the purposes of Mr. Seleznev's parole have been served.  *See Darwich v. Kemerling*, No. 25-cv-1162, 2026 WL 170801, at *8 (M.D.N.C. Jan. 22, 2026) (finding release to be the proper remedy where alien's parole was detained without explanation).

Because the Court will order Mr. Seleznev's release on due process grounds, the Court need not reach Petitioner's arguments with respect to the statutory basis of his detention.

### IV.  Conclusion

Because Respondents have failed to provide Petitioner with due process of law, the Court will grant the Amended Petition and order Petitioner's immediate release.

An appropriate Order shall issue.

Date: 4/2/26
Richmond, Virginia

_____/s/_____
M. Hannah Lauck
Chief United States District Judge